<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KEITH BAGLEY, | : | |
| | : | Civil Action No. 06-5616(JLL) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LYDELL B. SHERRER, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

KEITH BAGLEY, Petitioner <u>Pro Se</u>
# 297874-275253B
Northern State Prison
168 Frontage Road, NSP I-TRL, A2-6
P.O. Box 2300
Newark, New Jersey 07114

SARA A. FREIDMAN, ESQ.
Essex County Prosecutor's Office
Essex County Courts Building
Newark, New Jersey 07102
Counsel for Respondents

**LINARES**, District Judge

This matter is before the Court on Petitioner Keith Bagley's petition seeking habeas corpus relief under 28 U.S.C. § 2254. For the reasons discussed below, the petition for habeas corpus relief is denied for lack of merit.

# I.   BACKGROUND

## A.   Statement of Facts

The facts of this case are recounted below.  This Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its May 11, 1999 unpublished Opinion resolving Petitioner's direct appeal from his conviction.

> The proofs are summarized as follows.  At approximately 12:15 p.m. on December 5, 1996, Magaline Dyer left her apartment at 243 South Harrison Street in East Orange and walked to the parking garage of the apartment complex on her way to a doctor's appointment.  She placed her coat and purse in the back seat of her 1994 Bonneville and started to open the front door when she was struck in the back of her head with a hard object.  She testified that she felt a tingling sensation from her head to her toes as she fell to the ground.  Her assailant demanded money and struck her again in the head and then in her left rib cage with what she saw to be a hammer.  When she told him that she did not have any money, the assailant picked up her car keys that had fallen to the pavement and sped off in her car.
>
> The police arrived shortly thereafter.  Ms. Dyer was taken to East Orange General Hospital where she was treated for her injuries, receiving six stitches to close a wound to her head.  While at the hospital she gave a detailed description of her assailant as a dark complexioned black male about 5'6" to 5'7" tall with a beard and mustache wearing a yellow ski cap, black sneakers and black clothes.  She described the hammer as silver in color with a chip in its claw.
>
> Two weeks later, on December 19, 1996, police officers investigating an unrelated offense observed defendant.  When defendant saw the police vehicle, he ran across a parking lot clutching his stomach until the police car cut him off. The defendant was told to drop whatever he had in his hands but refused to do so until one of the officers drew her weapon.  The defendant then dropped a hammer with a broken claw.  He was arrested, charged with possession of a

burglary tool and detained because the hammer led police to suspect him in the carjacking and assault on Ms. Dyer.   The following day Ms. Dyer was shown a photographic array and identified a picture of defendant as her assailant.   She also identified the hammer as the weapon used to assault her.   Other evidence produced by the State included still photographs taken from a video surveillance camera in the parking garage showing a black male entering and exiting the garage at the time of the assault.

Defendant elected not to testify.   He called Lieutenant Stephen Bright from the Essex County Prosecutor's Office to testify that a latent fingerprint lifted from the rearview mirror of the victim's car could not be matched to defendant.

(Exhibit D, May 11, 1999 Appellate Division Opinion on direct

appeal, at pp. 2-3).[1]

_____

[1]   The state court record submitted by respondents' counsel, relevant to this matter, is designated by reference to the Respondents' Exhibits as follows:

A.   Petitioner's Brief and Appendix on direct appeal
B.   State's cover letter and affidavit of service, dated December 16, 1998
C.   State's Letter Brief on direct appeal
D.   May 11, 1999 Appellate Division Opinion on direct appeal
E.   Notice of Motion to file petition for certification, dated June 21, 1999
F.   Petition for certification
G.   State's opposition letter to petition for certification, dated June 29, 1999
H.   July 15, 1999 Order of New Jersey Supreme Court granting motion to file petition for certification as within time
I.   September 22, 1999 Order of New Jersey Supreme Court denying certification
J.   Petitioner's Brief and Appendix on appeal from denial of his state court petition for post-conviction relief ("PCR"), with   1) amended verified PCR petition
                                          2) October 7, 2004 Order denying PCR
                                          3) notice of appeal filed December 8, 2004
K.   Petitioner's pro se supplemental brief and appendix on

3

**B.  Procedural History**

On April 8, 1997, Petitioner, Keith Bagley ("Bagley"), was indicted by an Essex County Grand Jury on the following charges: (1) first degree carjacking, in violation of N.J.S.A. § 2C:15-2; (2) first degree armed robbery, in violation of N.J.S.A. § 2C:15-1; (3) second degree aggravated assault, in violation of N.J.S.A. § 2C:12-1b(1); (4) fourth degree possession of a weapon, hammer, in violation of N.J.S.A. § 2C:39-5d; and (5) third degree

---

| | |
|---|---|
| | his state PCR appeal |
| L. | State's Brief and Appendix in opposition to Petitioner's PCR appeal |
| M. | Petitioner's letter, notice of motion, certification and pro se reply brief |
| N. | February 14, 2006 Appellate Division Opinion affirming denial of PCR petition |
| O. | Petitioner's letter, certification, notice of motion and letter petition for certification nunc pro tunc, filed March 22, 2006 |
| P. | State's letter in opposition to petition for certification, dated March 24, 2006 |
| Q. | April 24, 2006 Order of New Jersey Supreme Court denying motion for over-length petition |
| R. | Petitioner's revised petition for certification, dated April 28, 2006 |
| S. | June 13, 2006 Order of New Jersey Supreme Court granting motion to file revised petition for certification |
| T. | September 6, 2006 Order of New Jersey Supreme Court denying petition for certification |
| | |
| 1T | transcript of grand jury proceedings of March 31, 1997 |
| 2T | trial transcript of December 16, 1997 |
| 3T | trial transcript of December 17, 1997 |
| 4T | trial transcript of December 18, 1997 |
| 5T | transcript of sentence proceeding on January 20, 1998 |
| 6T | transcript of PCR proceeding on October 7, 2004 |

possession of a weapon for an unlawful purpose, in violation of
N.J.S.A. § 2C: 39-4d.

A jury trial commenced on December 16, 1997, before the
Honorable Donald W. Merkelbach, J.S.C.  The jury returned a
verdict on December 18, 1997, finding Bagley guilty on Counts 1,
2, 4 and 5.  On Count 3, the jury found Bagley not guilty, but
did find him guilty of the lesser included offense of aggravated
assault with a deadly weapon.  Judge Merkelbach sentenced Bagley,
on January 20, 1998, to an aggregate prison term of 26 years with
a 13-year parole ineligibility.  Judgment of conviction was
entered on January 23, 1998.

Bagley filed a Notice of Appeal on March 26, 1998 before the
Superior Court of New Jersey, Appellate Division.  The New Jersey
Appellate Division affirmed the conviction and sentence in an
unpublished opinion filed on May 11, 1999.  Bagley filed a
petition for certification, which the Supreme Court of New Jersey
denied on September 22, 1999.

On October 7, 1999, Bagley filed a petition for post-
conviction relief ("PCR") in state court.  Judge Merkelbach
denied the PCR petition after a hearing on October 7, 2004.
Bagley appealed the decision.  The Appellate Division affirmed
the denial of the state PCR petition in an unpublished opinion
filed on February 14, 2006.  The Supreme Court of New Jersey
denied certification on September 6, 2006.

Thereafter, Bagley filed this petition for habeas relief under 28 U.S.C. § 2254, on or about November 22, 2006.  He filed an amended petition on February 2, 2007.  Respondents answered the petition on February 23, 2007 and provided this Court with a copy of the relevant state court record for habeas review. Bagley has not submitted a reply to the State's answer to the petition.

## II.   <u>STATEMENT OF CLAIMS</u>

In his petition and amended petition, Bagley raises the following claims for habeas relief:

**Ground One:**  Petitioner was denied his constitutional right to effective assistance of trial counsel because his counsel:

(1)   failed to use the victim's grand jury testimony, which was purportedly inconsistent with the victim's trial testimony, to cross-examine the victim at trial;

(2)   failed to subject the surveillance videotape and still photographs taken from the videotape to adversarial testing;

(3)   failed to subject the fingerprint evidence presented during Petitioner's case-in-chief by Lieutenant Bright to "first hand testimony";

(4)   failed to interview four purported eyewitnesses and call them during Petitioner's case-in-chief at trial;

(5)   failed to request a hearing pursuant to <u>United States v. Wade</u>, 388 U.S. 218 (1967); and

(6)   failed to object to the use of Petitioner's municipal court conviction against him during sentencing.

**Ground Two:**  Although not designated as a separate claim, Petitioner argues that the PCR court erred when it denied him an

6

evidentiary hearing on his ineffective assistance of counsel claims.

**Ground Three:** Petitioner was denied his constitutional right to effective assistance of appellate counsel because counsel:

(1)   failed to argue on appeal that there was a lack of credible evidence to support a conviction;

(2)   made an argument on the trial judge's "flight instruction"[2] that was "very mild and gene[ric]"; and

(3)   raised the issue of trial counsel's failure to request a <u>Wade</u> hearing in terms of an ineffective assistance of counsel claim on direct appeal, thus procedurally barring ineffective assistance of counsel claims on collateral review.

---

[2]   The Judge gave a flight instruction to the jury at Petitioner's state court trial because Petitioner purportedly ran from police when they saw him on December 19, 1996.

The State answered the petition asserting that Petitioner's claims are without merit and fail to state a claim.[3]  The Court herein decides Petitioner's claims on the merits.[4]

---

[3]  The State also asserts that various claims asserted in the instant petition are procedurally barred on habeas review.  A procedural default occurs when a habeas petitioner's federal claim is "barred from consideration in the state courts by an 'independent and adequate' state procedural rule."  See, e.g., Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002); Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996).  In Harris v. Reed, 489 U.S. 255, 266 (1989), the Supreme Court held that a habeas claim was not procedurally defaulted where the state court did not clearly and expressly rely on the procedural bar as ground for rejecting the claim.

Here, it is clear the state courts did not rely on any state procedural bar in denying Petitioner's claims.  The PCR court denied these claims on the merits, and the Appellate Division simply affirmed that Bagley's claims were meritless and did not warrant discussion.  Therefore, this Court finds that these claims raised in this habeas petition are not procedurally defaulted and adjudicates such claims on the merits.

[4]  Respondents have not asserted that Petitioner failed to exhaust his state court remedies. A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ...."  28 U.S.C. § 2254(b)(1); see also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

It appears, from reviewing the record in this matter, that Petitioner has raised several claims of ineffective assistance of counsel which were not presented for review in his state PCR proceedings. In particular, Petitioner's claims that trial counsel was ineffective in failing to investigate possible witnesses, failing to subject the videotape and still photographs from the surveillance video to adversarial testing, and failing to subject the fingerprint evidence to "first hand testimony" were not presented in the state courts. Further, Petitioner's ineffective assistance of appellate counsel claims were not presented for review in the state court PCR proceedings.

Despite Petitioner's apparent failure to exhaust certain claims in this regard, the Court exercises its authority, under

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969). Because Petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

---

28 U.S.C. § 2254(b)(2), and decides the petition on the merits.

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue. The first clause, or condition, is referred to as the "contrary to" clause. The second condition is the "unreasonable application" clause. <u>Williams</u>, 529 U.S. at 412-13.

In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id</u>.

Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." <u>Id</u>. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law

10

alone is not sufficient to warrant habeas relief. Id. at 411;
see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000);
Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.
1999).

Consonant with Williams, the Third Circuit has held that
§ 2254(d)(1) requires a federal habeas court to make a two-step
inquiry of the petitioner's claims. First, the court must examine
the claims under the "contrary to" provision, identify the
applicable Supreme Court precedent, and determine whether it
resolves the petitioner's claims. See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891. If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision. Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result. Id. AEDPA prohibits such de novo review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable. Id. In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court

precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but not adjudicated by the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, No. 99-1651, 2000 WL 1523144, at *6 n.4 (D.N.J. Oct. 16, 2000); see also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring).

Finally, federal courts are required to apply a presumption of correctness to factual determinations made by the state court. 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## IV.  ANALYSIS

This Court will examine each of Petitioner's claims on the merits, pursuant to the standard of review as recited above.

A.   <u>**Ineffective Assistance of Trial Counsel**</u>

In Ground One of his petition and amended petition, Bagley asserts that his trial counsel was ineffective because he failed to investigate, prepare a thorough defense, and to subject the State's case to adversarial testing in the manners described above.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under <u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005), <u>cert</u>. <u>denied</u>, <u>Jacobs v. Beard</u>, 126 S.Ct. 479 (2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir. 2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

14

1.   __Victim's Grand Jury Testimony__

Bagley contends that trial counsel rendered ineffective assistance by not using the victim's grand jury testimony, which Petitioner claims was inconsistent with the victim's trial testimony, to cross-examine the victim at trial.

The state PCR court found that this claim was meritless:

As to the alleged failure to effectively cross-examine the state's witness, the decision in State v. Martin, 131 New Jersey 176 is instructive.  The Court held that this procedure cross-examination is within the domain of defense counsel involved strategy which normally cannot be second-guessed by the Courts. The defendant alleges that the cross-examination was deficient, yet fails to set out how it was deficient and what he believes proper cross-examination would have revealed.

Now, I know Ms. Turner this morning talked about alleged discrepancies between grand jury testimony and the testimony in court.  I do not believe that would have -- that meets the Strickland two-prong test.  So, clearly, the two-prong test of Strickland v. Washington requires such a showing. And without it, the defendant would not be entitled to an evidentiary hearing, let alone success on the merits.  My thinking as to this issue applies to -- also applies to the allegation that Mr. Masseo [sic] was deficient in failing to object to prosecutorial misconduct under a theory that the testimony of the victim witness was perjured.

As to the argument that defendant's attorney failed to object to prosecutorial misconduct, this argument is completely baseless.  Defendant bases this argument on certain inconsistencies in Ms. Dyer's grand jury testimony which he has tried to equate with perjury.

First, Ms. Dyer mistakenly saying she only saw one photo array as opposed to two did not prejudice the defendant.  If anything, evidence that she picked out defendant's likeness from amongst twice as many photos just lends credibility to the identification and would have worked against the defendant.

Second, the fact that Ms. Dyer testified that the police did not tell her Mr. Bagley's name is not even clearly a

contradiction as the police did not tell her his name until after she had identified him.  In any case, it is unclear how defendant believes this prejudiced against him before the grand jury.

(6T, PCR transcript at 36:23-38:12).

This Court denies Bagley's habeas petition on this claim because the state PCR court's decision was not contrary to the established federal law set forth in Strickland.  The PCR court very carefully set forth and discussed the two-part test under Strickland, finding that counsel's performance was not deficient and that such did not prejudice the Petitioner(6T, PCR transcript at 34:25-35:14; 37:8-15).  A thorough reading of the grand jury and trial transcripts of the victim's testimony demonstrates no material inconsistencies.  Further, any such inconsistencies were so minor that they had no capacity to change the outcome of the trial.  Bagley also has not shown that the state PCR court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim is denied for lack of merit.

## 2.  Surveillance Videotape Evidence

Next, Bagley asserts that his counsel was ineffective because he failed to subject the surveillance videotape and still photographs taken from the videotape to adversarial testing.  It appears that Bagley claims that counsel should have retained an

16

expert to review this evidence to confirm that the individual captured on the video was not Bagley.

The Court denies this claim. Bagley does not indicate in his petition how an expert would have helped his case. At trial, the prosecutor conceded that the video did not depict the actual crime scene and that it lacked sufficient clarity to positively identify Petitioner. The prosecutor used the video solely to show that a man with a beard and mustache and wearing clothes similar to that described by the victim had entered the parking garage at the time that the crime had occurred. From a strategic standpoint, counsel did not have to do anything with a video that could not identify Petitioner, especially given the fact that the State conceded this point in the opening statement. Indeed, there is the likelihood that any further enhancement of the video, if possible, could have proved that the person in the video was the Petitioner. Therefore, Bagley has failed to show any deficient performance by trial counsel in not obtaining expert review of the video and has failed to demonstrate any prejudice resulting from counsel's actions in this regard. This claim is accordingly denied.

### 3.  **Fingerprint Evidence**

Bagley also complains that his trial counsel did not subject the fingerprint evidence, submitted by the Petitioner at trial, to "first-hand testimony" and allowed the State to explain the

17

evidence by way of hearsay, namely, by the testimony of Lieutenant Bright.

At trial, Petitioner's counsel called Lieutenant Bright of the Essex County Prosecutor's Office as a witness. Lieutenant Bright testified that the sole useful fingerprint lifted from the victim's car did not match any prints in the Automated Fingerprint Identification System ("AFIS"). Lt. Bright also testified that Bagley's fingerprints would have existed in AFIS when the fingerprint matching test was performed because his fingerprints were taken and placed in AFIS upon his arrest some days earlier. Lt. Bright further acknowledged that no attempt was made to match this fingerprint to the victim or Bagley's fingerprint card, independent from AFIS, because that was not normal operating procedure. Thus, Lt. Bright's testimony at trial on the fingerprint analysis certainly gave the jury constructive evidence that the fingerprint found on the victim's car did not match Bagley.

Based on this fact alone, this Court finds no merit to Bagley's claim of ineffective assistance of counsel on this fingerprint issue. Bagley fails to show how the introduction of Lieutenant Bright's testimony constituted deficient performance or prejudice to the Petitioner. On the contrary, this evidence tended to disprove that Bagley had stolen the car. Having failed to meet the two-prong standard under Strickland, this claim is denied.

## 4.  Failure to Interview Witnesses

Bagley also asserts that there were four possible eyewitnesses to the crime which his counsel failed to interview and call to testify at trial:

(1)  Jose Lopez, a security guard, who gave the surveillance videotape to the police;

(2)  Officer Soto, who purportedly stopped the person captured on the surveillance video prior to him entering the parking garage.  The police report states that the actor appeared to Officer Soto to be high on drugs.  The actor said hello to the Officer and then assumed the position of being frisked. Without saying anything more, the actor then walked off in the direction of the parking garage;

(3)  Lisa Hoffman, who purportedly saw this individual from her window acting suspicious; and

(4)  The victim, Magaline Dyer told police that the culprit nearly ran over a mail carrier after the carjacking and that there was a maintenance crew and other people in the area who may have been witnesses.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir. 2001)(2001).  "[S]trategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92. Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different. Lewis, 915 F.2d at 115.

Petitioner's claim that counsel was ineffective for failing to investigate potential witnesses is denied. Bagley fails to demonstrate what further investigation would have revealed at trial and how he was prejudiced by counsel's actions. A careful review of the trial record shows competent, strategic, and reasonable decisions by counsel in his representation of Bagley. There is nothing in the police report indicating that there were any eyewitnesses to the crime, except the victim, Ms. Dyer. In 2004, during Petitioner's PCR proceeding, his counsel conducted a telephone interview with Lisa Hoffman, who confirmed that she did not see the incident. The mail carrier was never identified to enable counsel to investigate whether he saw anything. There is nothing to indicate that Jose Lopez, the security guard, witnessed the carjacking, only that he provided the police with the surveillance videotape. Further, there is no indication that Officer Soto saw the carjacking.

Thus, Bagley cannot demonstrate that trial counsel's failure to interview these alleged witnesses caused him prejudice or that their potential testimony would have resulted in a different outcome at trial. None of these witnesses saw the incident occur, therefore, none of these witnesses would have been able to give a description of the culprit and identify him in any photo lineup. In fact, these witnesses may have confirmed a description of the actor's clothing to be similar to that of the culprit as described by the victim. This would not have helped Petitioner at trial, but would have corroborated the victim's description and thus bolstered her identification of Bagley. Accordingly, this claim is denied.

### 5. Wade Hearing

Bagley also asserts that counsel was deficient in failing to request a Wade hearing. Petitioner claims that counsel's failure to request a Wade hearing was prejudicial because the State's case against him was based solely on the victim's identification of Petitioner, with no corroborating evidence.

An accused is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array. See Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); United States v. Ash, 413 U.S. 300, 320 (1973); see also Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification

21

procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"). In <u>United States v. Wade</u>, 388 U.S. 218 (1967), the Supreme Court held that where an accused is not represented by counsel in a post-indictment line-up identification procedure, the accused is entitled to a hearing to determine whether the identification procedure was so tainted that an in-court identification should be suppressed.

At trial, Bagley's counsel acknowledged to the trial judge that he did not request a <u>Wade</u> hearing before trial because, based on his review of the issues, he "certainly couldn't meet the threshold of any showing of suggestibility." (3T, 34:3-5). Bagley raised this issue on direct appeal. Without discussion, the Appellate Division found the claim to be meritless.

Having reviewed the state court record, this Court finds that the two police-conducted photo array identifications were not unduly suggestive or conducive to misidentification. No identification was made during the first photo array, which did not contain Petitioner's photo, thus rendering Ms. Dyer's later photo identification of Petitioner substantially reliable. There was no issue of suggestiveness raised with respect to the photo array containing Petitioner's picture, nor in the first photo showing where another suspect was the intended target for identification. Thus, misidentification of Petitioner under these circumstances was not likely.

22

Moreover, suggestiveness alone would not require the exclusion of identification testimony.  The reliability of the identification must be based on the totality of the circumstances.  A "suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability," for reliability is the "linchpin in determining the admissibility of identification testimony." Manson, 432 U.S. at 106 (1977).  In order to judge whether there was a substantial likelihood of misidentification, the court must look at the reliability of the identification in light of the "totality of the circumstances." Government of Virgin Islands v. Riley, 973 F.2d 224, 228 (3d Cir. 1992).  The court should consider factors such as the witness' original opportunity to observe the suspect, the degree of attention during the initial observation, the accuracy of the initial description, the witness' degree of certainty when viewing the suspect at the confrontation, and the elapsed time between the crime and the apprehension and identification. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Applying the Biggers factors here, this Court concludes that the out-of-court identification of Petitioner by Ms. Dyer was reliable.  First, the victim had ample opportunity to view the suspect at the time of the crime.  Ms. Dyer testified that Bagley was close to her and the area where her car was parked was directly under lights, giving sufficient illumination to produce

23

a reliable identification.  In addition, Ms. Dyer's description
of the suspect to the police on several occasions, including the
day of the incident, was precise and accurate.  Her clothing and
beard description substantially matched that of the culprit on
the video surveillance, also bolstering the reliability of her
identification.  Ms. Dyer had a high degree of certainty about
her identification, which she confirmed in a matter of seconds
after being shown the second photo array.  Finally, the length of
time between the carjacking and the identification was not so
great as to render the photo identification unreliable when
considering the totality of the circumstances.

Therefore, in light of all these factors, this Court finds
that the victim's identification of Petitioner was not so
inherently unfair or impermissibly suggestive as to create a
substantial likelihood of irreparable misidentification.

Moreover, to establish ineffective assistance of counsel
based on a failure to file a motion, in this case, a request for
a Wade hearing, Bagley must be able to show that the pretrial
hearing on the issue of identification would have succeeded.
Counsel's failure to file motions does not per se constitute
ineffective assistance of counsel.  See Kimmelman v. Morrison,
477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d
212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness
depends on whether the motion or objection would have been
granted or sustained had it been made.  United States v. Oakley,

827 F.2d 1023, 1025 (5th Cir. 1987).  Thus, "[c]ounsel cannot be faulted for failing to pursue meritless or futile objections." Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd 118 F.3d 1576 (3d Cir. 1997); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994)(stating that the failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).

Here, Petitioner cannot show that such a motion would have been successful if made.  Indeed, trial counsel commented that there was no indicia of suggestibility in the photo array identifications to warrant a Wade hearing.  Because such a motion would not have succeeded, this habeas claim is meritless.  There is no showing of deficient performance.  Bagley also does not articulate any basis for a Wade hearing that would demonstrate the prejudice prong under Strickland.  Accordingly, this claim is denied for lack of merit.

**6.  Sentencing**

Bagley further contends that his trial counsel was ineffective at his sentencing because counsel allegedly allowed a municipal court conviction to be used against him.[5]  As a result, Bagley received a higher sentence.  Bagley challenged his sentence on direct appeal, arguing that it was excessive because

---

[5] This Court notes that the municipal court charges were part of the presentence report prepared by the probation office for sentencing.

the trial court improperly weighed aggravating factor number one.[6]
The Appellate Division, without discussion, held that the
"sentence imposed does not shock our conscience in light of the
aggravating factors properly considered by the sentencing judge."
(Ex. D, May 11, 1999 Appellate Division Opinion on direct appeal,
at page 4).

Bagley again raised sentencing issues in his state PCR
petition.  The PCR court found:

> Now, the defendant's second point is that the sentence was
> illegal.  As previously noted, the Appellate Division in its
> decision stated: The sentence imposed does not shock our
> conscience in light of the aggravating factors properly
> considered by the sentencing judge.  And they cite State v.
> Roth (phonetic), 95 New Jersey 334 at page 364, 1984.
>
> The defendant, through Ms. Turner, makes a subsequent --- a
> second argument based on the recent decision of Blakely v.
> Washington, 524 U.S. -- I don't have the page number -- also
> 124 Supreme Court 2531, 2004 United States Supreme Court
> decision.  The Court in Blakely applied the rule announced
> in Apprendi v. New Jersey, 530 U.S. 466, United States
> Supreme Court.  In that Court, the Court in Blakely applied
> the rule announced in Apprendi that any fact other than a
> prior conviction that increases the penalty for a crime
> beyond a maximum penalty of the statutorily-prescribed range
> must be submitted to a jury and proven beyond a reasonable
> doubt does not apply to New Jersey ordinary term sentencing
> procedure.
>
> A review of the judgment of conviction and the record in
> this case demonstrates that what I did, what this Court did,

---

[6]  The Judgment of Conviction reflects the court's findings
with respect to the aggravating factors: (1) "The offense was
done in an especially heinous, cruel or depraved manner;" (2)
"The risk defendant will commit another offense because of prior
municipal court offenses;" and (3) "The need for deterring
defendant and others from violating the law."  The court found no
mitigating factors and consequently, determined that the
aggravating factors outweighed the mitigating factors.  (See
Judgment of Conviction at Ex. J, attachment Da8).

it weighed the aggravating and mitigating factors under N.J.S.A. 2C:44-1 to determine a specific sentence within the specified ordinary range of N.J.S.A. 2C:43-6(a). Clearly, this does not violate the Apprendi-Blakely standard. There is no basis in those decisions to overturn the legislatively-mandated fact-finding by a judge by a preponderance of the evidence of the relevant factors in determining a sentence within the ordinary range.

These factors were reviewed by the Appellate Division and found to be supported by the record. The Apprendi-Blakely cases apply where a sentence is imposed outside of the outer limit of the ordinary sentencing range because of grounds not before the jury. Clearly, this is not the case here.

(6T, 38:13-39:25).

Absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is a question of state law. See Chapman v. United States, 500 U.S. 453, 465 (1991); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984).[7] "[A] person who has

---

[7] In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected the petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts. The petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Chapman, 500 U.S. at 465 (citations omitted). Because the excessive sentence ground does not assert a federal constitutional claim, this Court lacks subject matter jurisdiction over this claim and Bagley is not entitled to habeas relief on this ground.

Moreover, this Court notes that both the Appellate Division and the PCR court found no constitutional violations in the sentence. In particular, the PCR court held that the Supreme Court precedent in Apprendi and Blakely[8] was not applicable in Petitioner's case, and the Appellate Division found the sentence did not shock the conscience given the aggravating factors considered by the sentencing judge. Further, the sentence imposed did not exceed the statutory maximum. Therefore, this claim is denied for lack of merit.

B.  **Failure to Grant an Evidentiary Hearing**

Although not designated as a separate claim, Bagley also argues that the PCR court erred when it denied him an evidentiary hearing on his ineffective assistance of counsel claims.

_____

[8]  Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004).

As a general rule, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Moreover, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation").  Thus, errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  Hassine, 160 F.3d at 954.

Further, in this case, a careful review of the PCR proceedings confirms that Bagley failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing.  This Court finds that the state PCR court committed no error of a constitutional dimension in denying an evidentiary hearing. Petitioner has failed to show that the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." <u>Williams</u>, 529 U.S. at 412-13.
Therefore, this claim is denied.

## C.   <u>Ineffective Assistance of Appellate Counsel</u>

Finally, Bagley contends that his counsel on direct appeal
was ineffective.  He claims that (1) appellate counsel failed to
argue that there was a lack of credible evidence to support a
conviction, (2) appellate counsel's argument on the "flight"
instruction to the jury was "very mild and gene[ric]"; and (3)
counsel raised the identification issue on direct appeal within
an ineffective assistance of trial counsel claim for failing to
seek a <u>Wade</u> hearing, thus procedurally barring this claim on
collateral review.

The Supreme Court has held that the Due Process Clause of
the Fourteenth Amendment guarantees a defendant the effective
assistance of counsel on a first direct appeal as of right.
<u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  Claims of ineffective
assistance of appellate counsel are evaluated under the
<u>Strickland</u> standard.  <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285
(2000); <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004).
Appellate counsel does not have a duty to advance every
nonfrivolous argument that could be made, <u>see</u> <u>Jones v. Barnes</u>,
463 U.S. 745, 754 (1983), but a petitioner may establish that
appellate counsel was constitutionally ineffective "if he shows
that counsel omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker,"

30

Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Moreover, in
order to prevail on a claim that appellate counsel was
ineffective, a petitioner must show not only that counsel's
performance fell below an objective standard of reasonableness,
but also that there was a reasonable probability, but for
counsel's deficiency in raising the arguments on appeal, that the
conviction would have been reversed on appeal.  See Buehl v.
Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527
U.S. 1050 (1999).

Bagley's claims of ineffective appellate counsel were not
raised in his state court PCR proceedings, see supra note 4.
Nevertheless, based on review of the record, this Court finds
that Petitioner fails to establish ineffective assistance of
appellate counsel because he cannot show that a different outcome
would have resulted on appeal if counsel had raised the arguments
as suggested by Petitioner.

First, Bagley alleges that appellate counsel failed to argue
that the trial evidence was insufficient to support the verdict.
This is a specious claim.  There was ample evidence to support
all of the elements of the offenses charged.  The victim gave a
very strong identification of her assailant and the weapon
(hammer) he used. She also testified at trial that Bagley was her
attacker and that the hammer found on him was the weapon used in
the carjacking.

31

Second, as to the issue on the flight instruction, appellate counsel did raise this claim, apparently forcefully enough (and thus, not in a "mild" and "generic" fashion), because it was the only claim the Appellate Division found that warranted discussion. Thus, this claim was presented for state court review in Bagley's direct appeal but was found to be totally lacking in merit as there was ample evidence of flight in the case to warrant a flight instruction. Accordingly, Bagley cannot establish the prejudice prong under <u>Strickland</u> with respect to this claim.

Finally, Bagley asserts that appellate counsel was ineffective in couching the identification issue as an ineffectiveness claim, i.e., trial counsel's failure to request a <u>Wade</u> hearing, on direct appeal, thus precluding him from raising ineffective assistance of counsel claims later in his PCR proceeding based on the state procedural bar set forth in <u>Rule</u> 3:22-5. Ineffective assistance of counsel claims are not typically raised on direct appeal because it requires the appellate court to look beyond the bounds of the record and the evidence presented at trial. <u>See</u> <u>United States v. Sturm</u>, 671 F.2d 749, 750-51 (3d Cir. 1982).

Even if counsel erred in couching the <u>Wade</u> issue in terms of an ineffective assistance of counsel claim, this Court finds no resulting prejudice from that conduct. The PCR court did review some of the ineffective assistance of counsel claims asserted by

Bagley here and found them to be without merit.  As to the other claims of ineffective assistance of counsel asserted in this petition, Bagley did not raise them in his PCR proceedings. Thus, they were unexhausted and no procedural bar applied to them, see supra notes 3, 4.  Moreover, based on review of the record, this Court has determined that such claims are wholly lacking in any merit.  Therefore, this claim will be denied.

## V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, Petitioner has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI.  CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.

JOSE L. LINARES
United States District Judge

Dated:    October 2, 2007

33